OTTO v. MANISTEE & NORTHEASTERN RAILROAD CO.

CARRIERS—DELIVERY—DAMAGES—CLAIMS—TIME FOR FILING.
    There is a delivery of a car of potatoes so as to require
    the filing of a claim for damages within four months
    thereafter where a consignee receives the potatoes under
    a joint account arrangement, whereby the consignor and
    consignee are to divide the profits and loss, and he takes
    possession of them, upon their arrival in a damaged con-
    dition, and puts the unfrozen potatoes in a car ordered
    from the railroad company in order that they may be
    salable.[1]

Error to Leelanau; Mayne, J. Submitted April 3,
1917. (Docket No. 15.) Decided June 1, 1917.

Assumpsit by August J. Otto against the Manistee
& Northeastern Railroad Company for breach of a
contract to deliver certain goods. Judgment for de-
fendant on a directed verdict. Plaintiff brings error.
Affirmed.

Hall, Gillard & Temple, for appellant.

Wilson & Johnson (Parm C. Gilbert, of counsel), for
appellee.

KUHN, C. J. On or about January 19, 1912, the de-
fendant, at plaintiff's request, placed for loading at his
warehouse at Provemont, Mich., a refrigerator car
known as "A. R. L. 4972," and 734 bushels of potatoes
were loaded into the car to be shipped to Pittsburg,
Pa. It is the claim of the plaintiff that when they were
loaded they were of No. 1 quality and were not frosted.
The proofs show that the car in question was shipped

[1] On validity of stipulation in carriers' contract requiring notice
of loss within specified time as applied to loss due to carriers'
negligence, see note in 17 L. R. A. (N. S.) 628.

from Provemont on the defendant's line January 22, 1912, and arrived at Pittsburg, its destination, on January 30, 1912, and was immediately inspected by the consignee. The plaintiff testified that at the time in question it took from four to six days for a car of potatoes to go from Provemont to Pittsburg, and that the average running time was five days. It is therefore asserted that the car should have arrived at Pittsburg on January 27th, so that a delay of three days is claimed, which is the negligence upon which the plaintiff relies. It is further claimed that on the 22d day of January the weather that this car experienced kept getting colder and colder, until about the 30th of January the weather was 10 degrees below zero; that when the car was opened by the consignee it was found that the potatoes were badly frozen on the bottom, ends, and sides of the car, causing a total loss of 177 bushels and 39 pounds.

Plaintiff claims that the consignee, in order to make the loss on the car as light as possible, caused another car to be placed next the car containing the potatoes, so that those not damaged might be sorted out and kept from those that had been damaged. The car in question was moved under a straight bill of lading issued by the defendant. The third paragraph of section 3 of the conditions printed upon the back of the bill of lading was as follows:

"Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery, or at the point of origin, within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable."

On February 9, 1914, the interstate commerce commission made an order allowing the filing of all loss and damage claims that accrued within two years prior

to February 9, 1914, which were filed with the carrier on or before April 1, 1914. The claim in this case was filed March 17, 1914. At the close of plaintiff's proofs counsel for the defendant moved the court to direct a verdict for the following reasons:

"*First.* That the defendant is not liable for the freezing of these potatoes caused by any delay in their transportation.

"*Second.* That the claim for damages was not filed by Mr. Otto within four months from the delivery of the potatoes as the bill of lading requires. These potatoes were delivered at Pittsburg on the 30th or 31st of January, 1912. The claim for these potatoes was not filed until March, 1914, so that no claim was filed within the time. That, of course, is undisputed."

The trial court granted the motion, and directed a verdict for the defendant, basing his decision entirely upon the first ground of the motion. Whether this action of the trial court was proper is the question which is before us for review.

The trial court based his conclusion upon the decision of this court in the case of *Lardie* v. *Railroad Co.*, 192 Mich. 77 (158 N. W. 31). Counsel for the appellant seek to distinguish the situation here presented from the facts in that case. It is, however, unnecessary for us to enter upon a discussion of this phase of the case, for in our opinion the trial judge might properly have directed a verdict on the second ground of the motion. It appears from the testimony of Harry Keally, taken by deposition at Pittsburg, that the car of potatoes was delivered to his firm on a joint account deal by which both parties divided the profits or a loss, if any. He testified that he took possession of the car immediately upon its arrival, and found that the potatoes were badly frozen on the bottom, sides, and ends of the car. There can be no question that the plaintiff, through his representative, assumed full control of the potatoes on the 30th of January. It is true

that he did not see fit to remove all the potatoes from the car, but ordered another car from the railroad company, and with reference to this he said:

"We then had the railroad company place an empty refrigerator car in the rear, and had several men take the good potatoes from car 4972 and transfer them into the empty car placed in the rear. We did this to put the potatoes in a salable condition."

He had as much control of the potatoes as if he had removed them and placed them in a warehouse, instead of another car. We see no escape from the conclusion that the claim accrued from the time of the delivery of the potatoes, which was on January 30, 1912. Under the terms of the bill of lading, the time of the filing of claims runs from "delivery of the property." It must be said, therefore, that the claim does not come within the terms of the order of the interstate commerce commission. That applies to claims "accruing within two years prior to the date of this report," which was February 9, 1914. This claim accrued January 30, 1912, which was more than the two years prior to the date of the report of the interstate commerce commission.

This conclusion makes it also unnecessary to consider the other question raised by counsel for appellee, wherein it is claimed that the railroad company was not bound to consider the order of the interstate commerce commission, because a bill of lading provision of this character cannot be waived by the carrier.

The verdict having been properly directed, the judgment of the lower court is hereby affirmed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.